**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ROCMON L. SANDERS,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | **No. 18-5477** |
| **v.** | : | |
| | : | |
| **WARDEN SEAN MARLER,** *et al.*, | : | |
| **Defendants.** | : | |

**McHugh, J.** **July 12, 2022**

**MEMORANDUM**

This is an action brought by a former pre-trial detainee who was housed at the Federal Detention Center in Philadelphia alleging numerous violations related to the conditions of his confinement. The Complaint is voluminous and scattershot. In the final analysis, however, Plaintiff has either failed to administratively exhaust his claims or, in the one instance where he sufficiently avers that the administrative grievance process was unavailable to him, failed to state a claim. Therefore, Plaintiff's claims will be dismissed with prejudice.

## I.   Factual and Procedural Background:

While awaiting trial, Petitioner Rocmon Sanders filed a Complaint, naming more than 20 Defendants and alleging over 150 constitutional violations during his time as a federal pre-trial detainee.[1] Specifically, he claims violations of the First, Fourth, Fifth, Sixth, Eight, Tenth,

---

[1] Mr. Sanders pleaded guilty to video voyeurism in violation of 18 U.S.C. 1801 and criminal contempt of court in violation of 18 U.S.C. 401(3), arising from his surreptitious recording of a nude minor, and, following his arrest, his violation of the court's order regarding contact with the victim and her family, for which he served approximately forty-five (45) months. He was recently released from FDC custody and is currently on supervised release. *See USA v. Sanders*, 18-cr-431 (Pratter, J.). At various points, Mr. Sanders insisted on proceeding *pro se,* and filed unsuccessful *pro se* petitions for habeas release and a writ of mandamus requesting disqualification of the presiding judge.

Thirteenth, and Fourteenth Amendments, the Religious Freedom and Restoration Act, the Privacy

Act, and the Pennsylvania Constitution, as well as other federal statutes.   In the Amended

Complaint, Sanders names 36 Defendants and includes additional violations.[2]   He seeks injunctive

relief, as well as money damages against Defendants.   Defendants have moved to dismiss.

      a.   <u>Plaintiff's Claims:</u>

Following review of the Amended Complaint, I provide the following broad lens

distillation of Plaintiff's claims.

First, Mr. Sanders avers that he was denied medical attention several times.   In September

2018, he had a bad toothache that was left untreated for twelve days.   ECF 45 at p. 63 ¶ 3.[3]   Sanders

alleges that he verbally complained of his tooth pain to the medical department staff and the

housing unit officers, and submitted a number of sick call request forms which were ignored.   *Id.*

Defendant H. Bokhari, a mid-level practitioner and former member of the FDC Medical

Department, saw Sanders on September 16, 2018, nine days after the onset of his tooth pain, and

is alleged to have "purposefully refused to prescribe any pain relief medication(s) to Sanders."   *Id.*

---

[2] In addition to Warden Marler, the Federal Defendants include the following individuals employed or formerly employed at FDC Philadelphia: J. Knox, Associate Warden; A. Wright, Captain; E. Shannon, Lieutenant; Ganzel, Lieutenant; Bridges, Lieutenant; Fontaine, Special Investigative Section Supervisor; Justin Mendek, Special Investigative Section; Alisha Gallagher, Legal Advisor; D. Bacon, Case Manager; R. Smith, Unit Counselor; "Mrs. Marchese," Trust Fund Supervisor; M. Pasternak, Correctional Officer; J. Marrero, Correctional Officer; Chaplin, Correctional Officer; Fox, Correctional Officer; "Officer S. Santos"; S. Herrill, Unit Counselor; Marissa Nash, Legal Advisor; "Mr. Cassano," Clinical Director; O. Dalmasi, Clinic Supervisor; H. Bokhari, Mid-Level Practitioner, Medical Dept.; Nurse Kistler; Dr. Conlon, Mental Health Services; R. Disalvatore, Case Manager; C. Cole, Unit Manager 1. The Amended Complaint lists the following individuals at BOP: Charles Samuels Jr., Director; Hugh J. Hurwitz, Director; Kathleen Hawk-Sawyer, Director; Darrin Howard, Northeast Regional Counsel; David Paul, Northeast Regional Director; D. Romero, Mailroom Supervisor, FDC Philadelphia; P. Horning, Food Services Administrator, FDC Philadelphia. Other federal employees referenced in the Amended Complaint (ECF No. 45) but not named specifically include: Associate Warden, Programs, FDC Philadelphia; Executive Assistant, FDC Philadelphia; Commissary Department Staff, FDC Philadelphia; Visit Registration Officers FDC Philadelphia; Director/Commissioner and Office Staff.

[3] Plaintiff's Amended Complaint contains several series of numbered allegations that restart at various places.   I therefore include the page numbers from the docketed PDF for clarity.

at p. 47 ¶ 28.  Two days later, he was seen by a dentist, who gave him pain medication.  *Id*. at p. 60.  He avers that he tried to submit a grievance regarding this denial of medical care, but no Unit Counselor or Case Manager visited him until October 1, 2018.  *Id*. When they did visit, both staff members refused to accept the grievance form.  *Id*. When Sanders informed the Unit Manager that the Unit Counselor and Case Manager had refused to accept the grievance form, the Unit Manager told him to mail all grievances to the BOP Regional Office, which Sanders alleges that he did.  *Id*. In another incident, Sanders asserts that he was denied medical attention for three days after a staff member, Defendant Bridges, squeezed a handcuff on his right wrists, bruising his bone and skin, but was ultimately prescribed pain medication for his wrist.  *Id*. at p. 104 ¶ 118.  Finally, he asserts that Defendant Colon denied him needed mental health treatment because he "requested to be treated by a psych other than her."  *Id*. at p. 109 ¶ 134.

Next, Mr. Sanders alleges various additional violations of his constitutional rights.  Sanders pleads that staff continually tamper or interfere with his mail.  This interference includes failure to accept legal mail, failure to open legal mail in his presence, and intentional delay or withholding of legal mail.  *See e. g., id*. at p. 66 ¶ 9; p. 83 ¶ 52; p. 89-90 ¶¶ 64-67; p. 102 ¶¶112-114; p. 108 ¶ 130; p. 114 ¶ 154.  In addition, Sanders asserts that Defendants have interfered with his access to counsel on multiple occasions.[4]  *Id*. at p. 83 ¶ 50; p. 94 ¶ 87; p. 105 ¶ 123.  He asserts several specific instances of religious discrimination against him and his wife.  *See e. g., id*. at p. 65 ¶ 7-8, p. 80 ¶ 41, p. 89 ¶ 63.  He also alleges that he received discipline without due process.  *Id*. at p. 4 ¶ 17; p. 107 ¶ 126.

---

[4] Concerned over the nature of this claim, and its potential impact on Plaintiff's ability to defend against the pending charges, the Court independently reached out to criminal defense counsel shortly after the Complaint was filed.  At that time, Plaintiff's counsel stated that he was able to communicate with his client and had not experienced any past or ongoing interference from prison officials.

Sanders also challenges the conditions of confinement, including deficiencies in facilities, *see, e.g., id.* at p. 83-84 ¶ 54; p. 90-91 ¶¶68-73, p. 74 ¶22, inadequate services and resources, *id.* at p. 69 ¶ 14; p. 74 ¶¶ 23-24; 75 ¶26; p. 77 ¶ 32; p. 79 ¶ 37; p. 83 ¶ 53; p. 92 ¶ 80-81; p. 94 ¶ 89, p.110 ¶ 140; and unsafe conditions, p. 93 ¶ 85.   He specifically challenges his detention in the Special Housing Unit, asserting that he was confined in the SHU for various periods of time without medical attention, recreation, phone calls, law library access, email access, or visit privileges, as well as subjected to unsanitary conditions within the SHU.  *Id.* at p. 99 ¶ 103.

Petitioner also asserts that a number of BOP's policies are unconstitutional.  Specifically, Petitioner challenges BOP's legal mail policies, *id.* at p. 2 ¶ 7; p. 80 ¶ 40; the policy of recording and sharing emails, mail, and recorded conversations with law enforcement without consent, *id.* at p. 71 ¶ 17; p. 100 ¶ 105; disciplinary procedures, *id* p. 78 ¶ 35; visit procedures, *id.* at p. 84 ¶ 56; p. 101 ¶ 108; and grievance procedures, *id.* at p. 69-70 ¶ 15, as unconstitutional.

He also raises several general challenges purportedly on behalf of classes of detainees. These include violations of equal protection based on the more favorable treatment of female detainees as compared to male detainees, *id.* at p. 73 ¶ 21; p. 92 ¶¶ 77-78; p. 96-98 ¶¶ 96-98; as well as religious discrimination claims against Muslim prisoners related to clergy staffing, dietary accommodations, and access to religious services, *id.* at p. 76 ¶ 28; p. 79-80 ¶ 37; p. 85 ¶ 57; p. 91 ¶ 75; p. 95-96 ¶ 93; p. 108 ¶ 129; and claims of racial discrimination, *id.* at p. 98 ¶ 101; p. 114 ¶ 153.  He also avers that detainees are forced to work for free, in violation of the Thirteenth Amendment.  *Id.* at p. 97 ¶ 99.  He claims that prison staff are illegally taking interest from the Inmate Trust Fund.  *Id.*  at p. 101 ¶ 110.

Finally, as will be discussed in more detail below, Sanders states that he has filed or attempted to file a number of administrative grievances related to the detention center's conditions.

4

As a result of these attempts to grieve, Sanders asserts that he experienced a variety of hardships in retaliation for exercising his First Amendment rights, including property destruction, cell transfers, false disciplinary reports, and interference with his mail and other services. *See, e.g.*, *id.* at p. 1 ¶¶ 2, 4; p. 3 ¶ 8; p. 3 ¶ 13; p. 67 ¶ 10; p. 81 ¶¶ 42-43; p. 83 ¶ 51; p. 84 ¶ 55; p. 93 ¶¶ 84-85; p. 98 ¶¶101-102; p. 100 ¶ 106; p. 104 ¶¶ 117-118; p. 105 ¶ 120-122; p. 107 ¶ 125.

## II.   <u>Standard of Review:</u>

Plaintiff is proceeding *pro se* and his pleadings must be construed liberally. *See generally Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–46 (3d Cir. 2013) (discussing a court's obligation to liberally construe pro se pleadings and other submissions, particularly when dealing with imprisoned pro se litigants).

The Defendants have filed a motion to dismiss, asserting a failure to exhaust administrative remedies. Such a motion is typically governed by the well-established standard set forth in *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3d Cir. 2009). Pursuant to *Paladino v. Newsome*, 885 F.3d 203, 211 (3d Cir. 2018), I informed the parties that I would be considering exhaustion in my role as fact finder and converted the motion to dismiss into a motion for summary judgment on the limited grounds of whether Plaintiff exhausted his administrative remedies. The standard for summary judgment is governed by Fed. R. Civ. P. 56(a), as amplified by *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Separately, because Sanders is proceeding in forma pauperis, I am required to screen his complaint under 28 U.S.C. § 1915(e)(2)(B)(ii). Such screening applies the same Rule 12(b) standard set forth in *Fowler. See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999).

**III.**   **Discussion:**

Defendants assert that Mr. Sanders has failed to administratively exhaust any of his claims, which is a prerequisite for bringing suit.  Plaintiff responds that administrative remedies were either unavailable to him or properly exhausted.    Except for one claim alleging deliberate indifference to a serious medical need, I conclude that Plaintiff has failed to exhaust.  As to his claim arising out of negligent medical care, I conclude that, on the facts alleged, it lacks merit as a matter of law.

     a.   Exhaustion Requirement Under the PLRA:

All of Plaintiff's many claims pertain to conditions at the Federal Detention Center.  The Prison Litigation Reform Act of 1995 ("PLRA") prevents prisoners from filing suit with respect to prison conditions under federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Woodford v. Ngo*, 548 U.S. 81, 85 (2006); *Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007).[5]  Proper exhaustion requires a prisoner to "complete the administrative review process" in compliance with all applicable procedural rules prior to filing suit in federal court.  *Woodford,* 548 U.S. at 88.

Exhaustion is mandatory, *Ross v. Blake*, 578 U.S. 632, 638 (2016), and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  It is "a non-jurisdictional prerequisite to an inmate bringing suit and, for that reason, . . . it constitutes a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time."  *Rinaldi v. United States*, 904 F.3d 257, 265 (3d

---

[5] The PLRA's definition of "prisoner" encompasses those "detained in any facility who [are] accused" of violations of criminal law.  42 U.S.C.§ 1997e(h).  The exhaustion requirement extends to cases filed by prisoner while incarcerated, even if the prisoner is released before the case ends.  *See Ahmed v. Dragovich*, 297 F.3d 201, 210 (3d Cir. 2002).

Cir. 2018) (citation and internal quotation omitted); *see also Small v. Camden Cnty.*, 728 F.3d 265, 271 (3d Cir. 2013) ("[E]xhaustion constitutes a preliminary issue for which no right to a jury trial exists.").

Defendants must establish that Sanders' failed to exhaust because exhaustion is an affirmative defense. *Small*, 728 F.3d at 268. "Furthermore, the defendant must prove that the prisoner-plaintiff failed to exhaust *each* of his claims. There is no 'total exhaustion' rule permitting dismissal of an entire action because of one unexhausted claim." *Id.* at 269 (emphasis in original). Moreover, the administrative process may be available as to some claims and not others. *Rinaldi*, 904 F.3d at 270 (noting that "sometimes there is a middle ground where, for example, a prisoner may only be able to file grievances on certain topics.")   If the defendant has "established that the inmate failed to resort to administrative remedies, the onus falls on the inmate to show that such remedies were unavailable to him." *Id*. at 268.

Prisoners need only exhaust "available" remedies.   Administrative remedies are unavailable in three circumstances: when the administrative process "operates as a simple dead end," when it is "so opaque that it becomes, practically speaking, incapable of use," or "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross,* 578 U.S. at 643-44.  Failing timely to respond to a grievance or ignoring an inmate's follow-up request for a decision renders a prison's administrative process unavailable. *See Robinson v. Superintendent Rockview SCI*, 831 F.3d 148, 154 (3d Cir. 2018).

Prior to considering Defendants' argument that Plaintiff had failed to exhaust his claims, the Court notified "the parties that it will consider exhaustion in its role as a fact finder" and provided the parties with "an opportunity to submit materials relevant to exhaustion" that were not

7

already before the Court.   ECF 72.   Plaintiff and Defendant have now each filed submissions specifically related to exhaustion.   ECFs 75, 80.   After reviewing the record, I find that the Defendants have met their burden to show failure to exhaust as to the majority of Plaintiff's claims.

> b.   The Parties' Submissions:

The record contains an affidavit submitted by Defendants that describes the administrative remedy process that prisoners must follow prior to bringing an action in federal court.   There are four phases of the Administrative Remedy Program.   *See* Summers Decl. at ¶ 3, ECF 62-1.   First, a prisoner must informally present an issue of concern to the staff, who shall then attempt to resolve the issue before that prisoner submits a Request for Administrative Remedy.   28 C.F.R. § 542.13(a).   Second, if the prisoner is dissatisfied with the informal resolution, the prisoner must submit a formal written Administrative Remedy Request on a BP-9 form within 20 calendar days. 28 C.F.R. § 542.14(a).   Third, a prisoner who is not satisfied with the Warden's response may submit an appeal on a BP-10 form to the Regional Director within 20 calendar days of the date of the Warden's signed response.   28 C.F.R. § 542.15.   Fourth, a prisoner who is not satisfied with the Regional Director's response may submit a final appeal on a BP-11 form to the General Counsel at the Central Office of Appeals within 30 calendar days of the Regional Director's signed response.   *Id.*   If the prisoner believes his or her complaint is sensitive and should not be reviewed by prison staff, they may file the complaint directly with the Regional Director.   *See* Summers Decl. at ¶ 3; 28 C.F.R. § 542.14(d)(1).   If the Regional Director rejects the claim, the prisoner has ten calendar days to cure the defect and either refile the claim with the Regional Director or at the institutional level.   *Id.*   Per the PLRA, "[n]o action shall be brought with respect to prison conditions … by a prisoner confined in any jail, prison, or other correctional facility until such

administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a); *see also* Summers Decl. at ¶¶ 3, 10.

In response to the *Paladino* notice, Defendants filed a copy of Plaintiff's SENTRY database administrative grievance record.  The SENTRY database tracks, among other things, "the status of administrative remedy requests filed by federal prisoners."  Baker-Dystra Decl., ECF 75-1.  BOP Paralegal Specialist, Ms. Baker-Dykstra, avers in her affidavit that the SENTRY records submitted are "a true and correct copy" and show "all administrative remedies filed by Plaintiff."  *Id*. ¶ 4.  The record submitted by Defendants reflects that Plaintiff only filed four administrative remedy requests prior to filing his amended complaint, none of which were fully exhausted.  *Id.* ¶ 5; Summers Decl. at 3, ECF 62-1.[6]

The four remedy requests are as follows: (1) a November 27, 2018 appeal of an incident report received for refusing to obey an order (Remedy ID 963058-F1).  This was denied by the Warden on January 11, 2019.  The denial informed Plaintiff that he had 20 days to appeal, but the record reflects that Plaintiff did not appeal.  Baker-Dykstra Decl. ¶ 5(a), Ex. 2.  (2) A November 27, 2018 request appealing an incident report for insolence (Remedy ID 963060-F1), which was denied by the Warden on January 9, 2019.  The denial informed Plaintiff he had 20 days to appeal, but Plaintiff did not appeal.  *Id*. ¶ 5(b), Ex.  3.  (3) A June 6, 2019 complaint titled "Staff and

---

[6]  Sanders has also filed three administrative claims for allegedly stolen and damaged property under the Federal Small Claims Act, 31 U.S.C. § 3723.  Summers Decl. ¶ 15.  One of his claims was withdrawn, and the Regional Office closed the claim.  *Id.* The Regional Office denied the other two property related claims, and Sanders failed to request reconsideration in a timely manner.  *Id.*

Petitioner has also filed a number of grievances since the filing of the Amended Complaint.  However, there is no evidence in the record that any of these later grievances were properly exhausted.  Baker-Dystra Decl. ¶¶ 4, 10.

AUSA in conspiracy to steal property and mail" filed with the Regional Director's Office.  The claim was rejected on June 11, 2019, and Plaintiff was advised he had to file the claim at institutional level and given 10 calendar days to cure the error.  On January 21, 2020, Plaintiff refiled the complaint directly with the Central Office (Remedy ID 980592-A1).  The Central Office rejected the claim on January 29, 2020 and told him to file claim at institutional level and gave him 10 calendar days to cure.  Mr. Sanders did not refile at the institutional level.  On July 7, 2020, Plaintiff again submitted the complaint to the Central Office and on July 24, 2020, the Central Office again rejected the complaint because he needed to submit it to the institution first.  Plaintiff did not resubmit it at the institutional level.  *Id.* ¶ 5(c).  (4) An October 15, 2019 complaint as to the commissary being out of items (Remedy ID 993889-F1).  The Warden denied this request on December 15, 2019 and advised Plaintiff that he had 20 days to appeal.  The record reflects that Plaintiff did not appeal this decision.  *Id.*  5(d), Ex. 4.

In response to the Court's *Paladino* notice, Plaintiff filed an affidavit.  ECF 80.  In it, he states that he submitted a box with copies of "a plethora of BP-8, BP-9, BP-10, BP-11 grievances submitted to every level of the F.B.O.P; numerous responses to those 'Administrative Remedy Forms'. . . numerous 'Rejection Notices' from every level of the F.B.O.P; a number of letters . . . submitted to F.B.O.P.  Directors and high-ranking officials" to "prove" that he "made every effort" to exhaust.[7]  *Id.*  He argues that the fact that the Court did not receive such box is "not surprising, as the defendants have been tampering with [his] legal and personal mail" since the filing of his complaint in 2018.  *Id.*  While Plaintiff avers that he received verification as the receipt and mailing

---

[7] There are inconsistencies in the record as to whether Plaintiff received responses to the various grievances he alleges that he filed or attempted to file.  His affidavit refers to numerous responses received as well as numerous rejection notices.  ECF 80.  Defendants have submitted copies of two responses sent to Plaintiff, as well as two drafts of two responses that were sent to Plaintiff.  ECF 75, Exs. 2-5.  However, in his Amended Complaint, Plaintiff states that "no grievance has received any response."  ECF 45 ¶ 45.

of this box, he does not attach any such verification.  Next, in some tension with his statement that he sent the Court a wealth of documents, including grievances filed and many responses to his remedy requests, he also testifies that that the Defendants "continue to make any administrative remedies unavailable to me in every way imaginable." *Id.*  However, rather than describing how the process was unavailable, he summarily states that he has previously described the unavailability of the grievance process in his initial and amended complaints and motions.[8]  Finally, he asserts that the "partial" records submitted by Defendants in response to the *Paladino* notice "fail to reflect the actual records of grievances [he] filed and/or attempted to file since 2018." *Id.*  His affidavit does not indicate in what way the SENTRY records or affidavits are incomplete or point to specific discrepancies or missing grievances.

> c. Defendants Have Established Failure to Exhaust as to the Majority of Plaintiff's Claims:

The affidavits from prison employees and SENTRY records indicate that Petitioner filed four administrative grievances prior to filing the Amended Complaint, none of which were properly exhausted.  On this point the record is undisputed.  Plaintiff points to no specific facts to contradict the affidavits and SENTRY Log, does not specifically assert as to each of these four grievances that he did in fact appeal or cure the deficiencies noted, and does not state that the grievance process was unavailable to him as to these particular claims.

Plaintiff argues that the records Defendants submitted are "partial" or incomplete and do not reflect all the grievances that he filed or attempted to file.  However, he points to no specific facts to contradict the affidavits and SENTRY Log, which Defendants assert is a complete record

---

[8] I construe Plaintiff to be incorporating his amended complaint and relevant motions by reference, and I consider the claims he made in those filings related to the unavailability of his administrative remedies in my analysis of the record.

of Plaintiff's administrative requests.[9]   The only information he provided in response to the *Paladino* notice was his affidavit, which is summary and conclusory.   Assuming that Plaintiff sent the Court numerous documents which were lost or interfered with, Plaintiff's affidavit does not provide any information as to the content of the forms submitted or the administrative process he may have followed as to each claim.[10]   A nonmoving party may not successfully oppose a summary judgment motion by simply replacing "conclusory allegations of the complaint ... with conclusory allegations of an affidavit." *Lujan v. Nat'l Wildlife Federation*, 497 U.S. 871, 888 (1990).

Plaintiff's general claim of incompleteness is analogous to *Paladino v. Newsome*, where the Plaintiff "vaguely claimed—without providing any specifics—that the Prison's records were 'incomplete' and that Prison employees purposefully interfered with his forms." 885 F.3d 203, 208 (3d Cir. 2018).   In *Paladino*, the Third Circuit affirmed the district court's grant of summary judgment on failure to exhaust grounds where the claims were vague, noting that "conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment.   Instead, Paladino needed to 'set forth specific facts that reveal a genuine issue of material fact' concerning the exhaustion of these claims." *Id.* at 208; s*ee also Maclary v. Carroll*, 2005 WL 440581 (D.

---

[9] I note that the records here are maintained in a computer database. *See Dawson v. Cook*, 238 F.Supp.3d 712, 719 (E.D. Pa. 2017) (finding that, despite deposition testimony to the contrary, there was "no basis ... to conclude that Plaintiff submitted a grievance that was not recorded" because there was "no electronic record of the grievance" in the Philadelphia Prison System's electronic system).

[10] The submission that purportedly went missing was filed prior to the Court notifying the parties it would consider exhaustion in its role as fact finder.   Plaintiff states he mailed the box in December 2021.   At the end of January 2022, the *Paladino* Order was entered.   At that point, Plaintiff was aware that his materials sent in December had not been docketed.   Nevertheless, the only response submitted to the *Paladino* Order was a two-and-a-half-page affidavit that does not offer any description of the content of the forms (beyond the fact that there were many forms submitted at each level), point to specific grievances missing from the record, or identify how the records submitted by Defendants were incomplete.   While Plaintiff need not have provided exact dates or copies of the forms, given that his forms went missing, merely stating that the Defendants' records are incomplete, without any additional details, does not suffice.

Del. Feb. 25, 2005), *affirmed* 142 F. App'x 618, 620 (3d Cir. 2005) (distinguishing between conclusory allegations and evidence in deciding the issue of exhaustion).  Similarly, Plaintiff's affidavit here in which he alleges that the records submitted by defendants fail to reflect the actual grievances he has filed or attempted to file since 2018 fails to set forth specific facts sufficient to withstand summary judgment.

Plaintiff argues that I should nonetheless consider his claims to be exhausted because the facility's administrative remedies were generally unavailable to him.  Specifically, the Amended Complaint alleges widespread unavailability of the process because staff are "permitted to refuse your form(s)," and "grievances are never attended to, and relief never given."  Am. Compl. ¶ 15. As described above, without more details, these statements are insufficient to establish blanket unavailability as to all claims, particularly in light of the fact that Plaintiff was successful in filing four grievances.[11]

The record reflects one instance in which Plaintiff specifically states that he was unable to access a grievance form.  Plaintiff avers that on October 17, 2018, he was denied entry to Defendant Bacon's office to obtain grievance forms.  *Id.*  ¶ 25.  Prison officials may not deny access to grievance forms and, had the record been more specific, this denial of forms would constitute unavailability.  But Plaintiff does not identify what claim he was attempting to grieve at that time.  Nor does he clarify whether he was provided access thereafter.  A single allegation of being denied access to a form without more particularity is insufficient to demonstrate blanket unavailability as to all claims.  Moreover, the record indicates that any denial of forms was neither

---

[11] The fact that a prisoner files some claims does not prove that the administrative process was generally available to him as to all grievances.  *See Rinaldi*, 904 F.3d at 270.  But it provides some evidence to contradict a claim of blanket unavailability.

complete nor longstanding, as Plaintiff successfully submitted two grievances the next month, in November 2018, demonstrating his access to the procedure.

The Amended Complaint also contains several more specific references to attempting to file grievances which Defendants refused to accept or filing "appeals" which were ignored, however there is insufficient evidence in the record as to what administrative procedures he followed to file these administrative remedy requests to defeat summary judgment.[12] While failing

---

[12] Specifically, the Amended Complaint refers to "appeals" of suspension of email access in retaliation for filing grievances as not being accepted. Am. Compl. ¶ 2. It also refers to an "appeal to the Warden, which he received no response to" regarding a retaliatory disciplinary report. *Id.* ¶ 33. He complains of another retaliatory disciplinary hearing which he appealed, but "received no response." *Id.* ¶ 43. These challenges all relate to alleged retaliation by prison officials against Plaintiff for exercising his First Amendment rights. However, even had there been factual support for the unavailability of the administrative process as to these complaints, the Third Circuit has repeatedly declined to extend *Bivens* to First Amendment retaliation claims in the prison context. *See Mack v. Yost*, 968 F.3d 311, 320–25 (3d Cir. 2020) ("[W]e decline to extend a Bivens remedy for First Amendment retaliation claims brought in the prison workplace assignment context."); *Bistrian v. Levi*, 912 F.3d 79, 96 (3d Cir. 2018) ("[T]he retaliation claim is not a recognized Bivens remedy[.]"); *Vanderklok v. United States*, 868 F.3d 189, 198 (3d Cir. 2017) ("The Supreme Court has never implied a Bivens action under any clause of the First Amendment.").

In addition, Plaintiff refers to "appeals" filed as to his conditions of confinement. First, Plaintiff states that a sink in his cell has water that cannot be shut off and that his grievances submitted about this have been ignored. Am. Compl. ¶ 71. He also alleges that he was in a cell with an inoperable toilet and no water from January 17 to January 28, 2020. The toilet was fixed on January 28, 2020, but the water pressure remained poor. *Id.* ¶ 149. He states that he has "submitted a number of verbal and emailed complaints" but is silent as whether he received any response. *Id.* Even had the record reflected that the grievance process was unavailable to him as to these claims, *Bivens* has not been extended to conditions of confinement claims under the Eighth Amendment. *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017) (holding that expanding Bivens as a cause of action is "a 'disfavored' judicial activity"); *Mammana v. Barben*, 856 F. App'x 411, 415 (3d Cir. 2021)(non-precedential) (noting that *Bivens* claims do not automatically fail, but declining to recognize Bivens action for "unconstitutional conditions of confinement, a step never taken by the Supreme Court nor any circuit court."). Moreover, even had a *Bivens* claim been available, Plaintiff fails to allege sufficient personal involvement by any defendant as to these claims.

Finally, he also states that two Defendants, Nurse Kistler and Dr. Dalmasi, cancelled his non-dairy diet "due to budget concerns" and that "appeals filed to Clinical Director Cassano are ignored." Am. Compl. ¶ 141. Elsewhere he refers to the diet cancellation as being retaliatory for filing grievances. *Id.* ¶ 8. As above, Sanders fails to assert how the cancellation of his non-diary accommodation violated his constitutional rights in a manner that could be addressed in a *Bivens* claim. Even if the institution's cancellation can be the basis of a *Bivens* claim, to state a plausible constitutional violation based on his limited diet, the meals would have to amount to punishment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Unconstitutional punishment typically includes both objective and subjective components. *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). The objective component requires an inquiry into whether "the deprivation [was] sufficiently serious" and the subjective component asks whether "the officials act[ed]

to respond to a grievance and ignoring an inmate's follow-up request for a decision does render a prison's administrative process unavailable, Plaintiff's affidavit does not provide any further information or details regarding these appeals, such as the dates that he attempted to file the appeals, the type of appeal, or any details as to the administrative procedures he may have followed. Moreover, there is nothing to indicate how or when (if at all) Plaintiff may have followed up with FDC officials requesting a decision as to these appeals. *See Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir.1982) (holding that Fed. R. Civ. P. 56(e) does not allow a party opposing summary judgment to rely merely upon bare assertions, conclusory allegations, or suspicions). Without more specificity, vague and conclusory mentions of appeals being ignored is insufficient to create a genuine issue of material fact regarding exhaustion.

For all of Plaintiff's claims—except the denial of medical care claim discussed in the next section—the record reflects that Plaintiff failed to administratively exhaust his claims and there is insufficient evidence in the record that the administrative process was unavailable to him for those claims. Summary judgment is therefore appropriate.

   a. Plaintiff has raised a material issue of fact as to whether the administrative process was unavailable with respect to his denial of medical care claim in September 2018

The record does reflect specific facts as to one instance where Plaintiff contends that his access to the administrative remedy process was thwarted. Plaintiff states that he experienced tooth pain on September 7, 2018, and that numerous requests for medical attention were ignored

---

with a sufficiently culpable state of mind," which can be implied "where the restriction is arbitrary or purposeless, or where the restriction is excessive[.]" *Id*. (citations omitted). The allegation that his diet meals were cancelled is insufficient to satisfy either component of a due process claim. Courts have held that prisoners' "basic needs for nutrition" must be met. *Hassine v. Jeffes*, 846 F.2d 169, 174 (3d Cir. 1988). Sanders has not alleged that the food he did receive is not nutritionally adequate. Moreover, Sanders' Complaint alleges the cancellation was related to budget restrictions, which is a legitimate government purpose, and he has not pleaded any serious risk to his health. And to the extent that he alleges that the diet cancellation was retaliatory, as discussed above, there is no *Bivens* remedy for retaliation claims.

until September 16, 2018, when he was seen by Defendant Bokhari and denied pain medication. He alleges that he tried to submit a grievance regarding this, but no Unit Counselor or Case Manager visited his unit until October 1, 2018.  When the Unit Counselor and Case Manager did visit, both staff members refused to accept his grievance form.  When Sanders informed the Unit Manager that the Unit Counselor and Case Manager had refused to accept the grievance form, the Unit Manager told him to mail all grievances to the BOP Regional Office, which Sanders alleges that he did.

Here, there are detailed allegations in the record that the grievance process was unavailable to him as to his grievance related to denial of pain medication.  If proven, the staff members' prolonged absence from the unit and subsequent refusal to accept the form rendered the grievance process unavailable.  *See Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003).  A prisoner has twenty days in which to file a grievance following the date on which the basis for the request occurred.  Summers Affidavit ¶ 3.  Here, staff did not visit until October 1, twenty-four days after his first complaints were ignored and fifteen days following the denial of pain medication, at which point the staff still refused to accept any grievance.[13]  These specific allegations establish a genuine issue of material fact as to whether administrative remedies were available to Plaintiff for his claim challenging the denial of medical care.  *Warren v. Prime Care Med. Inc.*, 431 F. Supp. 3d 565, 575

---

[13] In addition, the Unit Manager may have misdirected him through guidance that he should file his grievance directly with the Regional Office, which is not the first step in the administrative process unless the prisoner's grievance is sensitive and cannot be addressed by the informal resolution process. Summers Decl., ¶ 3; 28 C.F.R. § 542.14(d).  Here, the record is not clear as to whether the Unit Manager directed Sanders to file directly with the Regional Office because of the sensitive nature of the complaint or in an attempt to misdirect him.  *See Hardy v. Shaikh*, 959 F.3d 578, 588 (3d Cir. 2020) (discussing standard for misrepresentation leading to unavailability of administrative process).  The record reflects that prior to filing the Amended Complaint, Sanders submitted one remedy request directly to the Regional Office. Baker-Dykstra Decl. ¶¶ 5(c).  The Regional Office's rejection provided the appropriate direction to refile at the institutional level, as well as an extension of time to cure.  *Id.*

(E.D. Pa. 2019) (noting that "conflict between the Prison's records and the prisoner's deposition testimony creates a genuine issue of material fact when the prisoner sets forth specific facts regarding whether they exhausted their claim.") (cleaned up).   As such, summary judgment based upon failure to exhaust is denied as to that claim.

     b.  <u>Plaintiff's denial of medical care challenge fails to state a claim:</u>

Turning now to the merits of Plaintiff's challenge related to the denial of pain medication, Plaintiff has failed to state a claim.  *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 389 (1971) provides a judicially recognized remedy for constitutional violations committed by federal actors in limited circumstances.[14]   Here, Sanders alleges a claim for deliberate indifference to a medical need, which was recognized as an available *Bivens* claim in *Carlson v. Green*, 446 U.S. 14 (1980).  In that case, the Supreme Court recognized an Eighth-Amendment violation against prison officials for failing to provide life-saving medical care to an inmate with asthma that resulted in death.  *Id.*

Defendants accept that *Carlson* recognized a *Bivens* claim arising out of denial of medical care, but with a *caveat:* they note that *Carlson* was decided before the enactment of the PLRA and that the "absence of that litigation at the time *Carlson* was decided is a special factor that this Court should consider in rejecting this *Bivens* claim."  Mot. to Dismiss at 24-25.  *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1859 (2017) (holding that courts must first determine whether a case presents "a new *Bivens* context," by asking whether or not the case "is different in a meaningful way from

---

[14] Plaintiff purports to bring his claim under § 1983 for a violation of the Eighth Amendment, however, none of his claims are against any Defendants acting under color of state law.  For federal officials, "[i]t is well established that liability under § 1983 will not attach for actions taken under color of federal law." *Brown v. Philip Morris Inc.,* 250 F.3d 789, 800 (3d Cir. 2001).  Plaintiffs claim instead arises under *Bivens*.

previous *Bivens* cases decided by [the Supreme] Court" and if so, whether any "special factors counsel [] hesitation" in permitting the extension).

Here, although *Carlson* recognized a *Bivens* claim under the Eighth Amendment and Mr. Sanders' claim for deliberate indifference arises under the Fifth Amendment because he was a pretrial detainee, I conclude that this case does not present a new *Bivens* context.  In *Bistrian v. Levi,* 912 F.3d 79, 91 (3d Cir. 2018), the Third Circuit was presented with analogous circumstances: whether a claim for failure to protect under the Fifth Amendment was a new *Bivens* context when the Supreme Court had previously recognized a claim for failure to protect under the Eighth Amendment.  There, the Court reasoned the failure to protect claim did not present a new context, holding that "it is a given that the Fifth Amendment provides the same, if not more, protection for pretrial detainees than the Eighth Amendment does for imprisoned convicts . . . . [a]ccordingly, although [plaintiff's] claim derives from a different Amendment, it is not 'different in a meaningful way' from the claim at issue in *Farmer.*  The failure-to-protect claim here thus does not call for any extension of *Bivens*."  *Id.* at 91 (internal citation omitted).  In the same decision, the Third Circuit held that the PLRA cannot be "seen as dictating that a *Bivens* cause of action should not exist at all."  *Bistrian*, 912 F.3d at 93.

If I am correct that this case does not present a new *Bivens* context, I need not also consider under *Abbasi* whether "special factors" counsel against extension.  137 S.Ct. at 1857.  Regardless, however, I would not find any special factors that counsel against allowing detainee in federal custody to challenge substandard medical care.   Alternative remedies would not address the harm caused by inadequate medical care.  Like *Bivens* and *Bistrian,* this is a case where it "is damages or nothing."  *See Nyhuis v. Reno*, 204 F.3d 65, 70 (3d Cir. 2000) (observing that money damages are "not available under the Bureau of Prisons' administrative process.") (citations omitted).

Similarly, a habeas petition would not address the claimed harms, because it too gives no retrospective relief. *Preiser v. Rodriguez,* 411 U.S. 475, 494, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973) (observing that habeas relief does not provide for damages). Inadequate medical care claims are "squarely within *Bivens*' purpose of deterring misconduct by prison officials" and have been allowed for many years, limiting any separation of powers concerns or fears that allowing a claim will "unduly affect the independence of the executive branch in setting and administering prison policies." *Bistrian,* 912 F.3d at 93. Finally, it should be a shocking result to conclude that pretrial detainees have no remedy should serious medical needs be met with indifference.

Having determined that *Bivens* permits recovery here against Defendant Bokhari, I must consider whether Plaintiff states a claim for relief.[15]   As Mr. Sanders was a pre-trial detainee in federal custody, his claim arises under the Fifth Amendment. *Kost v. Kozakiewicz*, 1 F.3d 176, 188 (3d Cir. 1993). In assessing the denial of medical care to a pretrial detainee, the inquiry is whether the denial was "imposed for the purpose of punishment or whether it [was] but an incident of some other legitimate governmental purpose." *Bell v. Wolfish*, 441 U.S. 520, 538 (1979). In this inquiry, courts determine whether the complained of conditions serve "any legitimate purpose" and, if so, whether the conditions are "rationally related" to that purpose, which involves consideration of whether the conditions cause the detainee to endure such "genuine hardship" that the conditions are "excessive in relation to the purposes assigned to them." *Hubbard v. Taylor*, 399 F.3d 150, 159-60 (3d Cir. 2005).

---

[15] A *Bivens* claim cannot be premised upon a theory of *respondeat superior.  See Ashcroft v. Iqbal*, 556 U.S. 662, 675–77 (2009) (reasoning that "because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"). Therefore, on the record here, Plaintiff states a claim only as to the Defendant identified as personally involved in the denial of medical care: Defendant Bokhari.

The parties here both apply the Eighth Amendment's deliberate indifference standard to this claim.  Conceptually, the due process standard applicable to detainees seemingly provides more protection, in that the Court of Appeals has made clear that the Eighth Amendment merely provides a floor of protection for pretrial detainees. *Hubbard,* 399 F.3d at 167 n.23; *Davis v. City of Philadelphia*, 284 F. Supp. 3d 744, 752 (E.D. Pa. 2018) (McHugh, J.).   But the Third Circuit has recognized that because "pretrial detainees are entitled to at least as much protection as convicted prisoners … decisions interpreting the Eighth Amendment serve as useful analogies" for analyzing suits alleging that a pretrial detainee received inadequate medical care. *Boring v. Kozakiewicz*, 833 F.2d 468, 472 (3d Cir. 1987) (internal citation omitted); *see also Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003) (evaluating a pre-trial detainee's inadequate medical care claim under the standard used to evaluate similar claims brought under the Eighth Amendment).

Under the Eighth Amendment, a plaintiff must make "(1) a subjective showing that the defendants were deliberately indifferent to [his] medical needs and (2) an objective showing that those needs were serious." *Pearson v. Prison Health Serv*., 850 F.3d 526, 534 (3d Cir. 2017) (cleaned up).  A prison official is deliberately indifferent when he "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  A serious medical need is "one that has been diagnosed by a physician as requiring treatment or is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Inst'l Inmates v. Lanzaro*, 834 F.2d 326, 346–47 (3d Cir. 1987) (citation omitted).

Mr. Sanders complains of tooth pain that was left untreated.   Assuming that his medical need was serious, Sanders fails plausibly to allege that Defendant Bokhari's response, even if

suboptimal, rose to a level of deliberate indifference in violation of the Eighth Amendment or was intended for the purposes of punishment in violation of the Fifth Amendment.   Plaintiff alleges that when he was seen by Defendant Bokhari for his toothache, Bokhari instructed him to submit a "dental sick call form" and told him that there are "no 'emergency procedures' to relieve persons of excruciating pain."   Two days later, Plaintiff was seen by a dentist and prescribed pain medication.  The Complaint does not allege that the treatment provided was inadequate or that he suffered any lasting harm based on any delay in care.   As pleaded, though Bokhari did not immediately prescribe Plaintiff pain medication, he instructed him on how to get more specialized care.  This does not reflect deliberate indifference to a serious risk to Plaintiff's health or safety or wantonly inflicting excessive pain.   Moreover, Plaintiff has not alleged that there were emergency procedures for pain relief that Bokhari denied to him to punish him or that Bokhari was authorized to prescribed pain medication but withheld it for the purposes of punishment.  Plaintiff was in fact seen by a specialist two days later, and the two days of tooth pain is not sufficient rise to the level of a "genuine hardship" that is "excessive."   In that regard, "prison officials are afforded considerable latitude in the diagnosis and treatment of prisoners." *Palakovic v. Wetzel,* 854 F.3d 209, 227 (3d Cir. 2017); *Lenhart v. Pennsylvania*, 2012 WL 6562749 (W.D. Pa. Dec. 17, 2012), *aff'd* 528 F. App'x 111 (3d Cir. 2013) (pretrial detainee's disagreement with treatment was insufficient to state claim for deliberate indifference where a detainee who sought a visit with the doctor was seen by a nurse instead and given antibiotic treatments).  Plaintiff has therefore failed to state a claim.

## IV.   <u>Conclusion</u>

For the reasons set forth above, Defendants' Motion will be granted.  An appropriate order follows.

  /s/ Gerald Austin McHugh
United States District Judge